```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DAVON CABRERA,

                        Petitioner,
                                                                    OPINION AND ORDER
        -against-                                                   10-CV-4440 (SJF)

PEOPLE OF THE STATE OF NEW YORK,

                        Respondent.
----------------------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★ SEP 12 2013 ★
LONG ISLAND OFFICE

FEUERSTEIN, J.

Petitioner Davon Cabrera ("petitioner"), proceeding pro se, has filed the instant petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Docket Entry No. 1] (the "petition"). A judgment of conviction was entered against petitioner in the Supreme Court of the State of New York, Nassau County, upon a jury verdict finding him guilty of: (1) murder in the second degree, N.Y. PENAL LAW § 125.25; (2) criminal possession of a weapon in the second degree, id. at § 265.03; and (3) criminal possession of a weapon in the third degree, id. at § 265.02. Petitioner was sentenced as a second felony offender to: an indeterminate term of incarceration of twenty-five (25) years to life on the murder conviction; a determinate term of incarceration of fifteen (15) years and five (5) years' post-release supervision on the criminal possession of a weapon in the second degree conviction; and a determinate term of incarceration of seven (7) years and three (3) years' post-release supervision on the criminal possession of a weapon in the third degree conviction, with both weapon possession sentences to run concurrently with the murder sentence. For the reasons that follow, the petition is denied.[1]

---

[1] Respondent has argued that the petition must be stricken because it was not signed by petitioner as required by Rule 11 of the Federal Rules of Civil Procedure and was instead

1

I. Background

A. Trial[2]

On October 19, 2006, Felix Negron and Jody Hoskins, residents of Valentine Street in Roosevelt, New York, saw petitioner engage in a fist fight with Kail Ferro. T. 340-42, 361-65, 381-82.[3] The fight ended after petitioner struck Ferro with a bottle over his left eye. T. 340-42, 361-65, 381-82. No police report was filed after the fight, but a later police investigation revealed that the two (2) men were affiliated with rival gangs. T. 571-72.

At 12:30 p.m. on October 21, 2006, two (2) days after the fight, Marisol Santiago saw petitioner and Ferro arguing in front of 19 Valentine Street, the home of Negron and Santiago (the "house"). T. 318-20. Negron was working on a car in front of the house and saw petitioner chase Ferro up the driveway and into the backyard. T. 330-31. Negron was familiar with petitioner and Ferro and recognized them. T. 330-32. Negron then followed the men into the backyard of the house and saw petitioner pull from his waistband a silver, semi-automatic handgun with a bag attached to the side of the gun. T. 334-35. Petitioner pointed the gun at Ferro and fired a single shot into his back as he was attempting to climb the backyard fence. T. 333-37

---

apparently signed by his mother with his consent. Petitioner was notified that the filing was deficient, [Docket Entry No. 1-2], but never refiled a signed petition. However, the petition was not stricken, and Respondent was directed to respond. [Docket Entry No. 3]. Given that a refiled petition would now be untimely, the Court declines to dismiss the petition upon the basis that the original filing failed to comply with Rule 11.

[2] The trial court held a pre-trial hearing on October 9, 2007 to determine the admissibility of statements made by petitioner while in custody. The petition does not raise any issues regarding the pre-trial hearing.

[3] References to the trial transcript are indicated as "T."

2

Ferro was able to scale the fence after he was shot and reached the yard of a neighboring house before he collapsed. T. 415-17. After the shooting, Negron yelled at petitioner, "[Y]o, why you disrespecting my crib?" Petitioner responded, "[M]y bad," then walked to his bicycle and rode away. T. 383-85.

Santiago called the police when she heard the gunshot from inside the house. T. 321, 323, 339. Police Officers Carsten and Corry responded to the call and spoke with Negron and Santiago about the shooting. T. 389-90, 397. A neighbor then directed the officers to Ferro's body in a neighboring yard. T. 391. Ferro was lying on his back, not breathing, with blood and foam coming out of his mouth. T. 391. Officer Corry found an exit wound on Ferro's chest and was unable to find a pulse. T. 392. An ambulance technician then arrived and pronounced Ferro dead. T. 392. An autopsy later determined that the bullet entered Ferro's back, grazed his spine, perforated a rib, passed through his right lung and exited his body. T. 491.

Forensic Medical Examiner Dennis Bullock examined Ferro's body at the scene. T. 403. Bullock identified entry and exit wounds and found a bullet in Ferro's right front pocket, the appearance of which was consistent with a bullet that had been fired from a gun and had passed through a body. T. 404-08. Later ballistics testing revealed that the caliber of the bullet was nine (9) millimeters and that its rifling characteristics were consistent with a .380 semi-automatic pistol. T. 515-17. A search of the surrounding area did not yield a shell casing but revealed a blood trail from the fence to the location of Ferro's body. T. 414-19

Detective Milton Aponte, the lead investigator on the case, learned that petitioner had left Roosevelt, New York and that he was communicating with friends through an account on the social networking website Myspace.com. T. 539. Detective Aponte determined that the account was maintained by a person with petitioner's last name, and information obtained from

3

Myspace.com and internet service providers showed that the account was being accessed primarily from computers at a public library in Raleigh, North Carolina (the "library"). T. 539-40.

On March 5, 2007, Detective Aponte, Detective Sergeant Larson and Detective Robert Pescitelli traveled to Raleigh to apprehend petitioner and began to surveil the library with the assistance of a fugitive task force of the United States Marshalls Service. T. 540-41. On March 6, 2007, the surveillance team observed petitioner exit the library and apprehended him after a lengthy foot chase. T. 543-46.

Petitioner was taken to the Federal Courthouse in Raleigh for questioning. T. 546-47. Detectives Aponte and Pescitelli read petitioner his rights, and petitioner also read them himself. T. 549-53, 582-83. Petitioner agreed to answer questions without an attorney present but refused to sign the waiver of rights card. T. 551-53. After initially denying any knowledge of the shooting, petitioner acknowledged that he knew Ferro and that there were "problems" between them. T. 555. Petitioner then gave several contradictory versions of the events leading to the shooting. T. 554-61.

First, petitioner told Detective Aponte that he approached Ferro because Ferro was attempting to instigate a fight with him and that he saw a gun in Ferro's pocket. T. 557. After Detective Aponte explained that this version of events was not believable, petitioner admitted that he was in possession of the gun when he approached Ferro but claimed that, as he chased Ferro into the house, a person called "Little CJ" grabbed his arm, causing the gun to fire. T. 558. Under further questioning by Detective Aponte, petitioner changed his story again, claiming that Ferro was in possession of the gun initially, but that petitioner took it from him after a struggle, and as Ferro was running toward the back of the house, the gun "just goes off." T. 560. After

Detective Aponte again challenged his story, petitioner said, "[F]uck it, fuck it, I'm getting the L any way." T. 561. When Detective Pescitelli asked what petitioner meant by "the L," petitioner stated that it meant he was going to be sentenced to life in prison and that he did not want to speak to the detectives anymore. T. 561.

Detective Aponte transported petitioner back to New York after he signed a waiver of extradition. T 569-70. Police never recovered the gun used to kill Ferro, but a database search by Detective Aponte revealed that petitioner was not licensed to carry a gun at the time of the shooting. T. 547, 564.

Petitioner was indicted on one (1) count of murder in the second degree, one (1) count of criminal possession of a weapon in the second degree and (1) count of criminal possession of a weapon in the third degree. On December 14, 2007, following a jury trial, petitioner was convicted of all charges.

B. Post-Conviction Procedural History

Petitioner appealed his conviction to the Appellate Division of the New York State Supreme Court, Second Department (the "Appellate Division"), arguing that: (1) the trial court erred in admitting into evidence statements made to detectives by petitioner that were not properly noticed under New York Criminal Procedure Law § 710.30; (2) the prosecution failed to prove petitioner's guilt of murder in the second degree because there was insufficient evidence that he possessed the intent to kill; (3) the verdict was contrary to the weight of the evidence; (4) the court imposed an unnecessarily harsh and excessive sentence; and (5) the court erred in sentencing him for criminal possession of a weapon in the third degree which, according to him, is a lesser included offense of criminal possession of a weapon in the second degree. [Docket Entry No. 8] at Appx. 8.

On June 30, 2009, the Appellate Division affirmed petitioner's conviction, holding that: (1) the trial court did not err in admitting petitioner's statements because they "were made in the same conversation as the statements of which the prosecution gave notice . . . and were entirely consistent with those statements"; (2) petitioner's contention that the evidence was insufficient to prove murder in the second degree beyond a reasonable doubt was unpreserved for appellate review and, in any event, the evidence was legally sufficient; (3) the guilty verdict was not against the weight of the evidence based on the trial record; (4) the sentence imposed was not excessive; and (5) that criminal possession of a weapon in the third degree is a lesser included of criminal possession of a weapon in the second degree, was without merit. People v. Cabrera, 882 N.Y.S.2d 273 (App. Div. 2009). The New York Court of Appeals denied leave to appeal on October 30, 2009. People v. Cabrera, 890 N.Y.S.2d 450 (2009).

On September 10, 2010, petitioner, proceeding pro se, filed the petition, arguing that: (1) his guilt of murder was not proven beyond a reasonable doubt because the prosecution failed to establish that petitioner possessed the intent to kill; (2) the verdict was contrary to the weight of the evidence; (3) the court imposed an unnecessarily harsh and excessive sentence; and (4) the court erred in sentencing petitioner for criminal possession of a weapon in the third degree.

II.  Standard for Habeas Corpus Review

According to 28 U.S.C. § 2254(d),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). Claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). Cone v. Bell, 556 U.S. 449, 472 (2009) (citing 28 U.S.C. § 2254(d)). Where AEDPA's deferential standard of review does apply, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a), and "does not lie for errors of state law." Swarthout v. Cooke, --- U.S. ---, 131 S. Ct. 859, 861 (2011) (internal quotation marks omitted). An unreasonable application of established federal law occurs "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary

7

error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)). Therefore, a state court's unreasonable application of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." Sellan, 261 F.3d at 315; see also Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007) ("[I]t is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.") (internal quotation marks omitted).

III. Analysis

1. Legal Insufficiency Claim

Petitioner's claim that the evidence presented at trial was insufficient to establish his guilt of murder in the second degree is barred from habeas review. "Under the independent and adequate state ground doctrine, a federal court sitting in habeas 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' Independent and adequate state law grounds preventing federal review include violations of state procedural rules . . . ." Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). To bar federal habeas review, "'the last state court rendering a judgment in the case [must] clearly and expressly state[] that its judgment rests on a state procedural bar.'" Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000) (quoting Harris v. Reed, 489 U.S. 255, 266 (1989)).

On appeal of petitioner's conviction, the Appellate Division held as follows:

> The defendant's contention that the evidence was legally insufficient to establish his guilt of murder in the second degree is unpreserved for appellate review. In any event, viewing the evidence in the light most favorable to the prosecution, we

8

> find that it was legally sufficient to establish the defendants guilt of murder in the second degree beyond a reasonable doubt.

People v. Cabrera, 882 N.Y.S.2d 273, 274 (App. Div. 2009) (citations omitted). "[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citing Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)); see also Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."). Therefore, petitioner's insufficiency of the evidence claim is procedurally defaulted.

A federal court may review a procedurally defaulted habeas claim only when "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," Coleman, 501 U.S. at 750, such as "an extraordinary case[] where a constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray v. Carrier, 477 U.S. 478, 496 (1986). Petitioner has failed to show cause for his default or that a fundamental miscarriage of justice will result if the claim is not considered. Therefore, the insufficiency of the evidence claim is barred from habeas review.

Even if considered by the Court, petitioner's insufficiency of the evidence claim must be denied. When considering the legal sufficiency of the evidence supporting a state conviction, the Court "must look to state law to determine the elements of the crime," Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d.Cir. 2002) (internal quotation marks omitted); see also Langston v. Smith, 630 F.3d 310, 314 (2d Cir. 2011), and determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

9

elements of the crime beyond a reasonable doubt," Jackson, 443 U.S. at 319. "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Cavazos v. Smith, --- U.S. ---, 132 S.Ct. 2, 6 (2011) (quoting Jackson, 443 U.S. at 326). Moreover, when challenging the legal sufficiency of the evidence in a state criminal conviction, petitioner "bears a very heavy burden," Ponnapula, 297 F.3d at 179, of "rebutting the presumption that all factual determinations made by the state court were correct," Farrington v. Senkowski, 214 F.3d 237, 241 (2d Cir. 2000) (citing 28 U.S.C. § 2254(e)).

"A person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, [the defendant] cause[d] the death of such person or of a third person . . . ." N.Y. PENAL LAW § 125.25(1). "It is well established that intent to kill may be inferred from [the] defendant's conduct as well as the circumstances surrounding the crime." People v. Badger, 935 N.Y.S.2d 416, 417 (App. Div. 2011) (internal quotation marks and alteration omitted). There is more than sufficient evidence in the record to support a finding that petitioner intentionally shot Ferro in the back, including, inter alia: (1) the testimony of Negron, who witnessed petitioner shoot Ferro in the back; (2) the testimony of Santiago, who witnessed petitioner chase Ferro into her backyard and heard a gunshot shortly thereafter; (3) the testimony of Hoskins who, along with Negron, witnessed Ferro and petitioner fighting two (2) days before the shooting; and (4) petitioner's self-incriminating statements. Viewing this evidence in the light most favorable to the prosecution, a rational jury could have found that petitioner acted with the intent to kill Ferro. See, e.g., People v. Lopez, 946 N.Y.S.2d 780, 781 (App. Div. 2012) (holding that there was sufficient evidence to support a finding that the defendant acted with the

intent to kill where the prosecution presented evidence that the "defendant and the victim quarreled immediately before the shooting, and that [the] defendant was only a few feet away from the victim when [the] defendant pointed a gun at him and then fired that weapon") (citations omitted); Badger, 935 N.Y.S.2d at 418 (holding that there was sufficient evidence to support a conviction of murder in the second degree where the evidence showed that the defendant "cocked the shotgun, turned to his left, pointed the shotgun at a bystander and shot him at relatively close range, striking him in the torso"); People v. Flores, 728 N.Y.S.2d 438 (holding that there was sufficient evidence to support a finding that the defendant acted with the intent to kill where the defendant's statements could be reasonably interpreted as expressing such intent and he "pointed a loaded gun at the complainant's chest and cocked it, and, after being shoved by the victim, fired two shots in his direction"); People v. Francis, 619 N.Y.S.2d 71, 71 (App. Div. 1994) ("An intent to kill may be readily inferred from the fact that [the defendant] directed the gun towards the officer and pulled the trigger."). Therefore, petitioner's insufficiency of the evidence claim is denied.

2. Weight of the Evidence Claim

To the extent that petitioner has also asserted a claim that his conviction was against the weight of the evidence, the claim will not be considered by the Court because it is a "'pure state law claim' grounded in New York Procedure Law § 470.15(5)" and therefore is not cognizable on habeas review. Gumbs v. Heath, No. 10-CV-848, 2013 WL 1345073, at *11 (E.D.N.Y. Mar. 29, 2013) (quoting Correa v. Duncan, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001)); see also Kohler v. Connolly, No. 12-CV-1137, 2013 WL 1788611, at *4 (E.D.N.Y. Apr. 26, 2013) ("A weight of the evidence argument is a state law claim grounded in New York Criminal Procedure

11

Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."); Diggs v. Artus, No. 10-CV-1233, 2013 WL 837271, at *11 (E.D.N.Y. Mar. 5, 2013).

    3.    Sentencing Claims

Petitioner argues that his sentence of twenty-five (25) years to life was harsh and excessive. "No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Garrett v. Smith, No. 05-CV-3374, 2006 WL 2265094, at *12 (E.D.N.Y. Aug. 8, 2006); Pina v. Kuhlmann, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law."). New York law provides that the maximum term of an indeterminate sentence for murder in the second degree, a class A-1 felony, N.Y. PENAL LAW § 125.25, is life imprisonment, id. at § 70.00(2)(a), and that the minimum term shall not be less than fifteen (15) years nor more than twenty-five (25) years, id. at § 70.00(3)(a)(i). Petitioner was sentenced to an indeterminate term of incarceration of twenty-five (25) years to life. Therefore, petitioner's sentence was within the range prescribed by state law, and his harsh and excessive sentence claim does not raise a constitutional issue for habeas review.

Petitioner also argues that the trial court erred in sentencing him on both charges of criminal possession of a weapon because, according to petitioner, criminal possession of a weapon in the third degree, N.Y. PENAL LAW § 265.02, is a lesser-included offense of criminal possession of a weapon in the second degree, id. at § 265.03. This claim is predicated on the application of state law and is therefore not cognizable for habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). In any event, at the time of the

shooting, criminal possession of a weapon in the third degree was not a lesser-included offense of criminal possession of a weapon in the second degree. See People v. Totten, 555 N.Y.S.2d 451 (App. Div. 1990) ("[S]ince criminal possession of a weapon in the third degree under Penal Law § 265.02(4) includes the element that the possession not occur in the defendant's home or place of business, that crime is not a lesser included offense of criminal possession of a weapon in the second degree, for which the location of the possession of the weapon is not an element.").

IV. Conclusion

For the foregoing reasons, the petition is denied. As petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(1). In accordance with Federal Rule of Civil Procedure 77, the Clerk of Court shall serve a copy of this order upon all parties, including petitioner at his last known address. The Clerk of Court is directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 12, 2013
Central Islip, New York